IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KENYA TEASLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CV901 |
| ) | |
| SUZANNE HANSEN and ) | |
| JAMES FOX, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon *pro se* Plaintiff Kenya Teasley's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (Docket Entry 1.) Plaintiff has also filed a copy of her complaint. (Compl., Docket Entry 2.) For the following reasons, the Court will grant Plaintiff IFP status for the sole purpose of entering this Order and recommend that the Complaint be dismissed for failure to state a claim upon which relief can be granted. The Court will further recommend that Plaintiff's motion to seal documents (Docket Entry 3) be denied.

### I. FACTUAL ALLEGATIONS

Plaintiff initiated this action on October 1, 2020. (*See generally* Docket Entry 1; Compl.) In her Complaint, Plaintiff alleges that James Fox, Deputy Officer of the Durham County Sheriff's Department, and Suzanne Hansen, Trial Court Coordinator for the Durham County

Superior Court (collectively "Defendants") acted in their individual capacities to deprive her of her right to due process under the Fourteenth Amendment. (Compl. at 3-4.)[1]

More specifically, Plaintiff contends that on June 30, 2020 at the Durham County Superior Court, she had a civil pretrial motion hearing where Defendants were both present. (*Id.* at 4-5.) Plaintiff alleges that before the hearing began, Defendant Fox came and sat in the row behind Plaintiff and "started harassing/intimidating [her] for no reason at all." (*Id.* at 5.) Plaintiff alleges that other officers were present in the courtroom, but only Defendant Fox "took it upon himself to take things to another level" by coming to sit directly behind Plaintiff as she was waiting for the hearing to start. (*Id.*) She contends that his "actions were racially motivated based on a lie." (*Id.*)

Once the hearing started, Plaintiff alleges that Defendant Hansen "jumps up and says that I had threatened her and said, 'She was going down!'" (*Id.*) As a backdrop to these events, Plaintiff states that approximately one week prior to the hearing, she "reached out to Suzanne Hansen via email to ask why [she] was never contacted by a court appointed mediator for the case in question." (*Id.* at 4.) Defendant Hansen told Plaintiff that she would investigate the issue. (*Id.*) When Defendant Hansen did not follow-up, Plaintiff reached out to her again. (*Id.*) Plaintiff states that Defendant Hansen "gave [her] the run around and never a clear answer as to what happened with [her] case." (*Id.*) In response, Plaintiff told Defendant Hansen that she "would get to the bottom of the situation and that if she tampered with [her] case, [she] would report her to the magistrate's office for altering/hindering the judicial process and that this is a class H felony in [North Carolina]." (*Id.*)

---

[1] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear in CM/ECF.

Plaintiff further alleges that Defendant Hansen "reported to Judge Hudson that she felt threatened for her life," which is apparently why so many officers were present in the courtroom for her hearing on June 30, 2020. (*Id.* at 4-5.) Plaintiff asserts that she "never once threatened Suzanne Hansen and this can definitely be proven." (*Id.* at 5.) Plaintiff claims that Defendant Hansen's lie "tainted the transcript" for her case and "denied me my right to a fair judicial process, subjected me to racial profiling and harassment, and because the transcript was tainted, she denied me my right to submit an appeal." (*Id.*) Finally, Plaintiff alleges that Defendant Hansen committed a federal crime by making false statements in a courtroom where she was not a party. (*Id.*)

## II. DISCUSSION

Because Plaintiff seeks IFP status, the Court will review the Complaint to determine whether dismissal is appropriate because it is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); *Michau v. Charleston Cnty., S.C.,* 434 F.3d 725, 728 (4th Cir. 2006). "Dismissal of an action . . . is appropriate when it lacks an arguable basis in law or fact." *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010). A frivolous complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *see also Nagy v. Federal Med. Ctr. Butner*, 376 F.3d 252, 256-57 (4th Cir. 2004) ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition . . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)).

Alternatively, a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557). *Pro se* complaints are to be construed liberally and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted).

### A. Plaintiff's Fourteenth Amendment Claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1. "Due process under the Fourteenth Amendment contains both substantive and procedural components." *Melvin v. Soc. Sec. Admin.*, 126 F. Supp. 3d 584, 607 (E.D.N.C. 2015), *aff'd sub nom. Melvin v. Soc. Sec. Admin. of United States*, 686 F. App'x 230 (4th Cir. 2017). To state a procedural due process

claim, Plaintiff must plead facts demonstrating that she "had a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiff must then show that she was deprived of that interest by Defendants and "that the procedures [they] employed were constitutionally inadequate." *Id.* (citing *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)). To state a substantive due process claim, Plaintiff must show that the government interfered with one of her fundamental rights or liberty interests. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (listing rights protected by the Due Process Clause to include the rights to marry, procreate, raise one's children, use contraception, and obtain an abortion).

Based on the minimal facts Plaintiff alleges, it is evident that she cannot state a substantive due process claim. She has not alleged the deprivation of a fundamental right. Nor does she appear to have a cognizable liberty or property interest at stake which might form the basis of a procedural due process claim. While Defendant Fox's actions in the courtroom might support a state law cause of action, they do not form a cognizable constitutional claim. *See Bugoni v. Slosberg,* No. 10-80867-CIV, 2011 WL 579228, at *5 (S.D. Fla. Feb. 9, 2011) (unpublished) (finding no constitutional violation where bailiff "harassed plaintiff and entered plaintiff's personal space" during court proceedings) (internal quotations omitted).

Similarly, Defendant Hansen's actions do not constitute a constitutional claim. Plaintiff makes only cursory allegations that Defendant Hansen denied her the "right to a fair judicial process," tainted the hearing transcript, and denied Plaintiff her right to submit an appeal. Without more, the Court is unable to discern that a liberty or property interest of Plaintiff's was burdened by Defendant Hansen's actions, much less determine which procedures would have
5

been constitutionally required. Furthermore, "[c]ourt clerks . . . are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction." *Clay v. Yates*, 809 F. Supp. 417, 424 (E.D. Va. 1992), aff'd, 36 F.3d 1091 (4th Cir. 1994); *see also Honour v. Cooper*, 174 F. App'x 782 (4th Cir. 2006) ("To the extent that [plaintiff] objects to the handling of his prior cases by judges and court staff, we note that both courts and their staff are entitled to judicial immunity.") As the Trial Court Coordinator, to the extent that Defendant Hansen may have been acting at the direction of the Durham County Superior Court in her handling of Plaintiff's case, she is entitled to immunity. Finally, this Court does not have jurisdiction to address Plaintiff's concerns with the trial transcript at her hearing or the ultimate resolution of her state court matter. *See Harris v. Hedrick,* No. 5:14-CV-98, 2014 WL 5335933, at *2 (W.D.N.C. Oct. 20, 2014), aff'd, 602 F. App'x 124 (4th Cir. 2015) ("Under the *Rooker–Feldman* doctrine, federal district courts do not have jurisdiction over challenges to state court decisions."). Therefore, Plaintiff's due process claim must be dismissed for failure to state a claim.

### B. Plaintiff's Perjury Claim

To the extent that Plaintiff alleges that Defendant Hansen committed a federal crime by making "false statements in a courtroom where she was not a party," this perjury claim must also be dismissed for failure to state claim. First, Defendant Hansen's statements were made in state court. The federal perjury statutes only concern false statements made in federal court. *See* 18 U.S.C. § 1623 (addressing false statements made "in a proceeding before or ancillary to any court or grand jury *of the United States*") (emphasis added). Second, it is not at all clear from the facts in Plaintiff's complaint that Defendant Hansen made these statements about Plaintiff

6

under oath, which is a requirement of the federal perjury statutes. *See id.* ("Whoever under oath . . .") 18 U.S.C. § 1621 ("Whoever having taken an oath . . ."). Finally, Plaintiff has no private cause of action to enforce federal criminal perjury laws. *See Atiemo v. Proctor*, No. CV PX-16-3763, 2016 WL 7012300, at *1 (D. Md. Dec. 1, 2016) (unpublished) (holding that because federal criminal perjury statutes "'bear no indication that civil enforcement of any kind was available to anyone,' a civil complaint alleging violations of such statutes cannot be sustained as a matter of law") (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)).

### C. **Plaintiff's Motion to Seal Documents**

Plaintiff filed a Motion to Seal Documents on October 1, 2020. (Docket Entry 3.) Plaintiff seeks "permanent sealing of the original complaint and the application to proceed *In Forma Pauperis*." (*Id.*) Local Rule 5.4(b) requires that a motion to seal be accompanied by a brief "[i]f the party filing the documents is the party asserting confidentiality." M.D.N.C. LR 5.4(b). The accompanying brief must explain why sealing is necessary and why less drastic alternatives to sealing will not afford adequate protection. *Id.* It must also "address the factors governing sealing of documents reflected in governing case law" and "state whether permanent sealing is sought and, if not, state how long the document should remain under seal and how the document should be handled upon unsealing." *Id.* These requirements are necessary because the public has a "presumptive right of access . . . to all judicial documents and records" that can only be rebutted by a showing of countervailing interests that outweigh this right. *Doe v. Pub. Citizen,* 749 F.3d 246, 266 (4th Cir. 2014).

Plaintiff's request for permanent seal "is due to the personal confidential information outlined in both documents." (*Id.*) Plaintiff filed a redacted version of the documents she seeks

7

to seal but did not file an accompanying brief. (*See* Docket Entries 4-1, 4-2.) Because, as the party asserting confidentiality, Plaintiff has not addressed the required factors that would allow this Court to determine whether sealing is appropriate, it is recommended that her motion to seal be denied.[2]

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that *in forma pauperis* status is granted for the sole purpose of entry of this Order.

**IT IS RECOMMENDED** that the Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). **IT IS FURTHER RECOMMENDED** that Plaintiff's motion to seal documents (Docket Entry 3) be denied.

$\overline{\phantom{XXXXXXXXXXXXXXXXXXXXXXXX}}$
Joe L. Webster
United States Magistrate Judge

December 21, 2020
Durham, North Carolina

---

[2] The documents Plaintiff seeks to seal (Docket Entries 1 and 2) both bear the red lock symbol in this Court's CM/ECF system. The red lock indicates that the documents can only be accessed electronically by the applicable parties to this lawsuit and Court personnel.